**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMVAULT SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARRIOTT HOTEL SERVICES, INC., <br><br> Defendant. | Civ. A. No. 3:22-cv-02895 (GC) (JBD) <br><br> **MEMORANDUM OPINION** |

CASTNER, District Judge

**THIS MATTER** comes before the Court upon Plaintiff Commvault Systems, Inc.'s ("Commvault" or "Plaintiff") August 5, 2022 Motion to Dismiss Defendant Marriott Hotel Services, Inc.'s ("Marriott" or "Defendant") Amended Counterclaims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6).  (*See* ECF No. 24.)

The Court has carefully considered the parties' submissions, and decides the matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1.  For the reasons set forth herein, and other good cause shown, Commvault's motion is **GRANTED** as to Counts IV and V (the claims for declaratory relief) of Marriott's Amended Counterclaims (*see* ECF No. 14 ¶¶ 78-95), and these claims are hereby **DISMISSED** with prejudice.  Commvault's motion is **DENIED** as to Counts I, II, and III (for breach of contract) of Marriott's Amended Counterclaims (*see id.* ¶¶ 42-77).

I.      **BACKGROUND**

A.      **Procedural History**

The instant matter involves the excusability of contract-nonperformance, owing to alleged complications arising from the COVID-19 pandemic.  On May 18, 2022, Commvault initiated the instant diversity action, seeking a declaratory judgment as well as bringing common law causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. (*See* ECF No. 1.)  Commvault seeks a declaration that "it properly invoked the *force majeure* provision and is entitled to the cancellation of" a contract it entered into with Marriott[1] to host a conference at a Marriott venue in 2021.  (*Id.* ¶ 5.)  It claims that Marriott breached the contract and the covenant of good faith and fair dealing by refusing to acknowledge Commvault's October 2020 invocation of the *force majeure* clause and by demanding liquidated damages instead.[2]  (*Id.* ¶¶ 45-55.)  Diversity jurisdiction is asserted pursuant to 28 U.S.C. § 1332(a)(1).  (*Id.* ¶ 10.)

On July 1, 2022, Marriott filed its responsive pleading (*see* ECF No. 10), which it amended as of right on July 7, 2022 (*see* ECF No. 14).  In the Amended Counterclaims, Marriott alleges against Commvault separate claims for breach of three contracts to host large-scale conferences

---

[1]     The party against which Commvault asserted its initial claims, Ryman Hospitality Properties, Inc. d/b/a/ Gaylord Hotels, was subsequently substituted by stipulation for the designated proper party-in-interest, Marriott Hotel Services, Inc.  (*See* ECF No. 12.)  All references to the previously identified party are constructively amended to reference Marriott.  (*See id.* ¶ 6.)

[2]     Although not squarely raised by the present motion practice, the Court questions whether Commvault can maintain an affirmative claim for breach of contract based on a *force majeure* provision.  *See, e.g.*, *Vita Grp. LLC v. Compass Grp. USA, Inc.*, Civ. No. 21-16291, 2022 WL 1261536, at *4 (D.N.J. Apr. 28, 2022) ("A claim of *force majeure* excuses performance and defeats a breach of contract claim as an affirmative *defense*, but it does not give rise to an affirmative *claim* for breach of contract."); *Ricoh USA, Inc. v. Innovative Software Sol., Inc.*, Civ. No. 20-4025, 2020 WL 7024290, at *8 (E.D. Pa. Nov. 30, 2020) ("The *force majeure* clause . . . excuses performance of the parties' obligations if non-performance results from specified events; it does not create a cause of action for breach of contract if a party continues to operate as if the specified events did not occur.").

and seeks liquidated damages under each.  (ECF No. 14 ¶¶ 42-77.)  Marriott also asserts claims

for declaratory judgment under two of the three contracts.  (*Id.* ¶¶ 78-95.)

On August 5, 2022, Commvault moved for dismissal of Marriott's counterclaims pursuant

to Rule 12(b)(1) and 12(b)(6).  (*See* ECF No. 24.)  Marriott opposed (*see* ECF No. 25), and

Commvault replied (*see* ECF No. 28.)  For some time after, the parties continued to engage in

efforts to advance discovery (*see* ECF Nos. 30 & 35), but further discovery on the counterclaims

appeared to stall pending resolution of Commvault's motion (*see* ECF No. 36).  Most recently and

shortly before this opinion was issued, Marriott moved on April 14, 2023, for summary judgment

on all of Commvault's claims.  (*See* ECF No. 39.)  In view of this decision, that motion will be

terminated without prejudice as to its renewal at a later date so as to allow Marriott to consider the

impact, if any, of this Court's ruling.[3]

## B.    Factual Background[4]

Forming the bases of this dispute are three separate contracts (also known as the "Group

Sales Agreements"), within which Marriott (the corporate manager and operator of various resorts

and hotels nationwide) and Commvault (the host of a perennial series of popular customer

conferences) (*see* ECF No. 14 ¶¶ 1-3, 7), agreed that Commvault would host large-scale conference

---

[3]    The Court's strong preference would be for the parties to complete any remaining discovery on the claims and counterclaims in the action before either party brings a summary judgment motion.

[4]    "Where, as here, the defendants move to dismiss a complaint under Rule 12(b)(1) for failure to allege subject matter jurisdiction, we treat the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538 (3d Cir. 2017) (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001)).  Similarly, on a Rule 12(b)(6) motion for failure to state a claim, "a court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'"  *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

events at various Marriott venues in exchange for guaranteed occupancy and minimum spend by

Commvault (each contract contained specific room and block commitments) (*see id.* ¶¶ 15-17).[5]

The first contract ("Contract A"), executed on or about December 30, 2016 (*see id.* ¶ 9),

covered the conference series to be conducted in 2018, 2019, 2020,[6] and 2021.  (ECF No. 14-1.)

The second contract ("Contract B"), executed by the parties on or about March 28, 2018 (*see* ECF

No. 14 ¶ 10), governs the conferences that were scheduled to be held in 2022 and 2023.  (ECF No.

14-2.)  The third contract ("Contract C"), executed on or about September 13, 2018 (*see* ECF No.

14 ¶ 11), governs the conferences that were scheduled to be held during the years 2024 through

2026.  (ECF No. 14-3.)  (Collectively, Contracts A, B, and C are the "Contracts").

Each of the Contracts contains a similar although worded slightly different

"Impossibility"/*force majeure* clause, which provides:

> **IMPOSSIBILITY**
> The performance of this Agreement is subject to termination without
> liability upon the occurrence of any circumstance beyond the control
> of either party—such as acts of God, norovirus or similar outbreak,[7]
> war, government regulations, disaster, strikes (except those
> involving the employees or agents of the party seeking the
> protection of this clause), civil disorder, or curtailment of
> transportation facilities (by way of example, and not limitation,

---

[5]     The Court may take notice of the Contracts, which were appended to Marriot's Amended
Counterclaims, without converting this to a motion for summary judgment.  *See Mayer v.
Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (noting that on a Rule 12(b)(6) motion a court can
"consider . . . exhibits attached to the complaint, matters of public record, as well as undisputedly
authentic documents if the complainant's claims are based upon these documents").

[6]     Thus far, the only customer conference alleged to be the subject of Contract A's breach is
the 2021 conference.  (*See* ECF No. 14 ¶ 14 ("With regard to the 2018 Customer Conference, the
2019 Customer Conference and the 2020 Customer Conference, Marriott does not currently
contend that Commvault failed to either perform its obligations or was excused from performing
its contractual obligations under [Contract A].")).

[7]     Unlike Contract A, Contracts B and C do not contain the provision speaking specifically
to excuse for "norovirus or similar outbreak" and also omit the circumstance of failure to perform
being "impractical."  (*Compare* ECF No. 14-1 at 15, *with* ECF Nos. 14-2 at 12 & 14-3 at 13.)

transportation issues that prevent or unreasonably delay 50% or more of the attendees shall be sufficient to support termination of this Agreement)—to the extent that such circumstance makes it illegal, impractical or impossible to provide or use the Hotel facilities. The ability to terminate this Agreement without liability pursuant to this paragraph is conditioned upon delivery of written notice to the other party setting forth the basis for such termination as soon as reasonably practical—but in no event longer than ten (10) days—after learning of such basis. This Agreement may also be terminated by either party in the event the other party makes a voluntary or involuntary assignment for the benefit of creditors or enters into bankruptcy proceedings or by Commvault in the event of a change of ownership of the Hotel. Any terminations under this section shall entitle Commvault to a refund of all fees, to be paid within 10 days of such termination.

[(ECF Nos. 14-1 at 15, 14-2 at 12, & 14-3 at 13.[8])]

The Contracts also contain a provision requiring compliance with applicable laws and regulations, which provides:

**COMPLIANCE WITH LAW**
This Agreement is subject to all applicable federal, state, and local laws, including health and safety codes, alcoholic beverage control laws, disability laws, federal anti-terrorism laws and regulations, and the like. Hotel and Commvault Systems Inc. agree to cooperate with each other to ensure compliance with such laws.

[(ECF Nos. 14-1 at 15, 14-2 at 12, & 14-3 at 13.)]

In addition, the Contracts contain cancelation provisions that tie the liquidated damages that Marriott could be owed to the amount of notice given prior to the conference date. (ECF Nos. 14-1 at 14, 14-2 at 10-11, & 14-3 at 12-13.) In the event of cancellation, Marriott agreed that it would attempt to "resell" the rooms and reduce any cancellation fee owed accordingly. (*Id.*)

---

[8]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

In an October 7, 2020 letter, Commvault terminated the three Contracts with Marriott, citing the COVID-19 pandemic.  (ECF No. 14 ¶ 18.)  The Vice President and General Counsel of Commvault wrote:

> Unfortunately, due to the current pandemic, and the impact it has had and will continue to have on live event gatherings like ours, hosting these events is no longer possible or practical (and is currently illegal).
>
> Pursuant to the terms of each of the above referenced agreements, we are permitted to terminate them due to, among other things, the impossibility, illegality and/or impracticality of using the Hotel's facilities. . . .
>
> [(ECF No. 14-4.)]

Based on Commvault's termination of the Contracts, Marriott asserts a series of claims thereunder and seeks substantial sums in liquidated damages or, in the alternative, actual damages in an amount to be proven at trial: Count I is for breach of Contract A and the cancellation of the 2021 conference; Count II is for breach of Contract B and the cancellation of the 2022 and 2023 conferences; and Count III is for breach of Contract C and the cancellation of the 2024, 2025, and 2026 conferences.  (ECF No. 14 ¶¶ 42-77.)

Marriott brings two additional claims seeking declaratory judgments under the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  Count IV asks the Court to "declare the rights and obligations of the Parties under [Contract B] with respect to the matters in dispute"[9] (*id.* ¶¶ 78-86), and Count V likewise asks the Court to "declare the rights and obligations of the Parties under [Contract C] with respect to the matters in dispute" (*id.* ¶¶ 87-95).

---

[9]  The "matters in dispute" appear to include whether Commvault properly invoked the "Impossibility" provision, whether the notice of termination was timely, and whether Marriott is owed cancellation fees and/or liquidated damages.  (*Id.* ¶ 86.)

The essence of Marriott's claims is that Commvault's invocation of the Contracts' "Impossibility"/*force majeure* clause in October 2020 was improper, because Commvault cancelled the conferences long before many of them were scheduled to be held and nothing then made it illegal, impractical, or impossible for the future conferences to proceed. As a result, Marriott contends that it is entitled to damages, including liquidated damages in line with the cancellation provisions of the Contracts.

### C. Parties' Arguments

In support of its Motion to Dismiss, Commvault argues that Counts II through V of Marriott's counterclaims, which relate to Contracts B and C, should be dismissed because the claims "are not ripe for judicial review." (ECF No. 24-1 at 15.) Commvault argues that "[t]here exists no current case or controversy with respect" to these two contracts "because the conferences referenced therein have not yet occurred," and the Court "would be unable to issue a decree of conclusive nature because . . . damages are not only uncertain, but are not guaranteed to even occur." (*Id.* at 17-18.) In the alternative, Commvault argues that all of the claims should be dismissed for failure to state a claim. As to Counts I through III (for breach of contract), Commvault argues these should be dismissed because the three Contracts contained *force majeure* provisions that excused non-performance due to an unforeseen "act of God" such as the COVID-19 pandemic. (*Id.* at 20.) As to Counts IV and V (seeking declaratory judgments), it argues these should be dismissed because Commvault timely notified Marriott of its termination of Contracts B and C consistent with the *force majeure* clauses and Marriott has yet to suffer any damages and

7

has a duty to mitigate potential future harm that may result for the cancellation of conferences on dates yet to pass.  (*Id.* at 23-25.)

In response, Marriott argues that, contrary to Commvault's contentions, "Marriott's claims for anticipatory breach of contract and declaratory judgment are entirely ripe for review, and in no way subject to dismissal with prejudice" for failure to state a claim.  (ECF No. 25 at 9.)  Marriott argues that the doctrine of anticipatory breach entitles it as the non-repudiating party to claim damages for Commvault's repudiation of its contractual duties prior to the agreed-upon time for performance.  (*Id.* at 21.)  Marriott contends that it is knowable today what Commvault allegedly owes in liquidated damages and interest due, and any credit subsequently owed as a result of the "resell" of rooms can be assessed in the future when the performance dates pass.  (*Id.* at 25-26.)  Marriott also argues that it has stated a claim for breach of contract under all three Contracts and that "Commvault's beliefs and opinions regarding the strength of Marriott's claims are irrelevant . . . as to the question of whether a claim has been stated."  (*Id.* at 29-30.)  As to its claims for declaratory judgment, Marriott maintains "that an actual controversy has arisen . . . with respect to" Contracts B and C, and "this alone should end Court's analysis of whether Marriott has failed to state a claim."  (*Id.* at 31-32.)

In reply, Commvault contends that its ripeness challenge does not contest the propriety of a claim for anticipatory repudiation generally; instead, it is based on the alleged fact that Marriott "has yet to, and likely will not, suffer any damages" as a result of Contracts B and C for the Court "to issue a decree of conclusive nature."  (ECF No. 28 at 3.)  It insists that Marriott's reliance on the liquidated damages in the Contracts as an actual injury "misses the mark because . . . it is expressly contrary to the Force Majeure language contained in the contracts."  (*Id.* at 4.)

## I.   LEGAL STANDARD

### A.   Ripeness/Lack of Subject Matter Jurisdiction, Rule 12(b)(1)

Ripeness is one of the "several justiciability doctrines that 'cluster about Article III.'" *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "At its core, '[t]he ripeness doctrine serves to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 412 (3d Cir. 2021) (quoting *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004)). Its "purpose . . . 'is to prevent the courts . . . from entangling themselves in abstract disagreements . . . until [a disagreement] . . . has been formalized and its effects felt in a concrete way by the challenging parties.'" *Id.* (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 147 (1967)); *see also Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994) ("[R]ipeness is about *when* they can sue, . . . if no injury has occurred, the plaintiff can be told . . . that she cannot sue *yet*." (quoting *Smith v. Wisconsin Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1141 (7th Cir. 1994))).

Although difficult to pinpoint, when a party seeks a declaratory judgment, the ripeness analysis is "guided by three key factors: 'the adversity of the interest of the parties, the conclusiveness of the judicial judgment[,] and the practical help, or utility, of that judgment.'" *Siemens USA*, 17 F.4th at 412-13 (quoting *Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 496 (3d Cir. 2017)); *accord Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017).

**B.      Failure to State a Claim, Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The same standard of review is applied on a motion to dismiss counterclaims.  *See In re Gabapentin Pat. Litig.*, 649 F. Supp. 2d 340, 346 (D.N.J. 2009) ("The same standards are applied to a court's analysis of the sufficiency of counterclaims.").

**C.      The Declaratory Judgment Act, 22 U.S.C. §§ 2201-2202**

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201 and 2202, "provides a remedy that may be used by the federal courts in appropriate circumstances."  *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000).  The statute "provides that '[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further

relief is or could be sought.'"[10]  *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196 (3d Cir. Aug. 18, 2021) (quoting 28 U.S.C. § 2201(a)).  "One of the primary purposes behind the [DJA] [i]s to enable plaintiffs to preserve the status quo before irreparable damage [i]s done, . . . and a case should not be considered justiciable unless 'the court is convinced that [by its action] a useful purpose will be served.'"  *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990) (citation omitted).

## II.   **DISCUSSION**

### A.  **Ripeness of Marriot's Counts II Through V**

Under New Jersey law,[11] a claim for breach of contract must plausibly plead: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  *Frederico v. Home Depot*, 507 F. 3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)).

Here, Marriott has pled the existence of three Contracts with Commvault; that Commvault breached those contracts by repudiating them and cancelling planned conferences without paying the liquidated damages; and that it is owed liquidated damages for Commvault's breach and Marriott's willingness to have performed.  (*See* ECF No. 14.)  Commvault acknowledges the existence of the Contracts and that there is a dispute as to whether the termination of them was a

---

[10]    The "phrase 'case of actual controversy' in the [DJA] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937)).

[11]    The parties both cited New Jersey law in their briefs, and Marriott underscored that it consented to the application of the substantive law of New Jersey here "without conceding" it might argue for the application of the substantive law of other states when appropriate.  (ECF No. 25 at 14-15 n.9.)

breach or consistent with the Contracts' *force majeure* provisions, but it argues that Marriott's claims for breach of Contracts B and C (and the declaratory judgments sought thereunder) are not ripe for judicial review because Marriott has a duty to mitigate and the Court would be unable to determine actual damages until the 2022 through 2026 conference dates pass.  (ECF No. 24-1 at 18.)  The Court disagrees.

When Commvault wrote to Marriott in October 2020 to terminate the three Contracts and to cancel all future conferences (ECF No. 14-4), this was an unequivocal repudiation of the Contracts that gave rise to an immediate potential claim for anticipatory breach.  *See Skycliff IT, LLC v. N.S. Infotech Ltd.*, 2018 WL 2332219, at *5 (D.N.J. May 23, 2018) ("an anticipatory breach 'occurs when a party renounces or repudiates a contract by *unequivocally* indicating that it will not perform when performance is due'" or when "reasonable grounds support the obligee's *belief* that the obligor will breach the contract" (citations omitted)).

Indeed, it has long been understood that where there is repudiation of a contract and resulting "total breach," the repudiation can ripen into a claim before the time of performance if the promisee elects to treat the repudiation as such.  *See Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) (A "promisor's renunciation of a 'contractual duty *before* the time fixed in the contract for . . . performance' is a repudiation," and "a repudiation ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such.'"  (quoting 4 A. Corbin, Contracts § 959, p. 855 (1951), and *Roehm v. Horst*, 178 U.S. 1, 13 (1900))); *see also R.C. Beeson, Inc. v. Coca Cola Co.*, 337 F. App'x 241, 244 (3d Cir. 2009) ("a combination of an act deliberately repudiating the agreement and an act indicating to the non-breaching party that any future performance either will not occur or will not be in compliance with the contract terms commences the running of the statute of limitations").

Nevertheless, if Marriott were to prevail in this action on its breach of contact claims for conference dates that have not yet passed, Commvault is correct that any final judgment and allotted damages would likely have to incorporate credits resulting from the resell of rooms or other steps taken by Marriott to mitigate consistent with the Contracts and other legal duties. This alone, however, does not foreclose Marriott from being able to pursue suit until the anticipated conference dates pass when it was Commvault that chose, years in advance, to unequivocally repudiate the Contracts and effect a total breach. *See, e.g.*, *In re Victor Dye Works, Inc.*, 48 B.R. 943, 947 (Bankr. E.D. Pa. 1985) ("[W]e are not precluded from entertaining this suit merely because the exact amount of damages was unknown at the time of the filing of the suit. The burden will be on the plaintiff to prove not only the allegations of the complaint but also the appropriate forms of relief and the amount of damages. We conclude that the issues raised are ripe for determination.").

Accordingly, Commvault's motion to dismiss Marriott's Counts II through V on the ground of ripeness is denied.

## B. Whether Marriot Fails to State a Claim

In the alternative, Commvault argues that all of Marriott's claims should be dismissed as a matter of law because Commvault properly invoked the Contracts' *force majeure* provisions and "[t]he COVID-19 pandemic is . . . an act of God that made it impossible for Commvault to continue its commitments to host the 2022 through 2026 conferences." (ECF No. 24-1 at 20-21.) Phrased differently, Commvault wants this Court to hold at the motion to dismiss stage that Commvault's affirmative defense of *force majeure* excuses the repudiation and non-performance of the Contracts between Commvault and Marriott.

13

Although the Court is cognizant that the COVID-19 pandemic and ensuing restrictions on business operations have been held, and could be held here, to be a *force majeure* event that authorizes the termination of an otherwise enforceable agreement, this Court believes that it is premature under the present circumstances to determine that question.  Other courts across the country have cautioned against deciding the applicability of a *force majeure* provision without the benefit of a more fulsome factual record than what is available based solely on the pleadings.  *See Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1340 (S.D. Fla. 2020) ("a determination of whether the *Force Majeure* Provision . . . foreclose Plaintiff's breach-of-contract claim is more appropriate at the summary judgment stage"); *Lampo Grp., LLC v. Marriott Hotel Servs., Inc.*, Civ. No. 20-00641, 2021 WL 3490063, at *7 (M.D. Tenn. Aug. 9, 2021) ("the applicability of a *force majeure* clause may raise factual questions that cannot be resolved in the early stages of litigation"); *Palm Springs Mile Assocs., Ltd. v. Kirkland's Stores, Inc.*, Civ. No. 20-21724, 2020 WL 5411353, at *2 (S.D. Fla. Sept. 9, 2020) ("the issue of the applicability of the *force majeure* clause to this case is a factual question that cannot be determined on a motion to dismiss").

Indeed, because the nonperforming party bears the burden of proof, *Gulf Oil Corp. v. FERC*, 706 F.2d 444, 452 (3d Cir. 1983), and "[a] *force majeure* clause must be construed, like any other contractual provision, in light of 'the contractual terms, the surrounding circumstances, and the purpose of the contract,'" *Facto v. Pantagis*, 390 N.J. Super. 227, 232 (App. Div. 2007) (quoting *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282 (1993)), providing the parties an opportunity to pursue necessary discovery and to demonstrate with a factual record why the invocation of *force majeure* was or was not warranted strikes this Court as the most prudent course of action.  *See* 30 Williston on Contracts § 77:31 (4th ed.) ("Even when an event is an extreme and unforeseeable occurrence of the magnitude to trigger a *force majeure* clause, . . . a litigant must

14

still carry its burden to prove that the [event] qualified as a *force majeure* event as defined by the contract in question.").

In any event, there appear to be factual nuances here that may need to be explored before a substantive decision is rendered on the breach of contract claims, including but not limited to the differences in the language of the "Impossibility"/*force majeure* provisions between the three Contracts, whether terminating in 2020 conferences that were not scheduled to occur until as far out as 2026 was consistent with *force majeure*, and whether the notice provided to Marriott by Commvault complied with the notice provisions in the Contracts. *See, e.g., Lampo Grp., LLC*, 2021 WL 3490063, at \*8 ("[T]he court finds that, at a minimum, there is a question of fact as to whether Ramsey Solutions waived its ability to terminate based on that event by not giving timely notice."). Ultimately, these questions of fact may weigh on any resolution, so it would be premature for the Court to decide the issues based on the record before it now.

Nevertheless, the Court agrees that Counts IV and V of Marriott's Amended Counterclaims should be dismissed as duplicative of the breach of contract counterclaims in Counts II and III. It is well-settled that "[c]ourts may dismiss counterclaims requesting declaratory judgment where they are redundant . . . ." *Lilac Dev. Grp., LLC v. Hess Corp.*, Civ. No. 15-7547, 2016 WL 3267325, at \*3 (D.N.J. June 7, 2016). Especially where, as here, "the plaintiff seeks declaratory relief simply to 'resolve the parties' obligations under the applicable [contracts]" a court can "dismiss claims for declaratory judgment that are duplicative of breach of contract claims." *Golden State Med. Supply Inc. v. AustarPharma, LLC*, Civ. No. 21-17137, 2022 WL 2358423, at \*7 (D.N.J. June 30, 2022) (quoting *AV Design Servs., LLC v. Durant*, Civ. No. 19-8688, 2021 WL 1186842, at \*12-13 (D.N.J. Mar. 30, 2021)) (finding that the requested "declaration would serve no useful additional purpose," and dismissing the claim as duplicative). Here, because Marriott's

Case 3:22-cv-02895-GC-JBD   Document 42   Filed 04/24/23   Page 16 of 16 PageID: 879

claims for declaratory judgments under Contracts B and C are merely seeking declarations of "rights and obligations" under the two Contracts, these claims are duplicative of and subsumed by the claims for breach of those two Contracts, and the declaratory judgment claims are appropriately dismissed.

## III.   <u>CONCLUSION</u>

For the reasons stated forth herein, and other good cause shown, Commvault's Motion to Dismiss (*see* ECF No. 24) is **GRANTED** as to Counts IV and V of Marriott's Amended Counterclaims (*see* ECF No. 14 ¶¶ 78-95), and Marriott's claims for declaratory relief are hereby **DISMISSED** with prejudice.  Commvault's motion is **DENIED** as to Counts I, II, and III of Marriott's Amended Counterclaims (*see id.* ¶¶ 42-77).

Dated:  April 24, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE